**TOYOTA**
Southeast Toyota Finance

WORLD OMNI FINANCIAL CORP. d/b/a
# SOUTHEAST TOYOTA FINANCE
RETAIL INSTALLMENT SALE CONTRACT - SIMPLE INTEREST

Dealer Number: ▮▮▮▮  Account Number: ▮▮▮▮

| Buyer (and Co-Buyer) - Name(s) and Address(es) (Include County and Zip Code) | Creditor (Seller) - Name and Business Address |
|---|---|
| QUENTESHA COOPER<br>1115 WINGATE CIRCLE<br>Conyers, GA 30012 ROCKDALE | ASBURY ATLANTA TOY 2 LLC<br>7969 MALL PKWY<br>LITHONIA, GA 30038 |

**Meaning of Words.** In this contract the words "you", "your" and "yours" refer to the Buyer and Co-Buyer, if any, collectively. The word "Creditor" refers to the Creditor (Seller) named above and, after assignment to World Omni Financial Corp. d/b/a Southeast Toyota Finance ("SETF") and any subsequent assignee.
**Who is Bound.** You may buy the vehicle described below for cash or on credit. The cash price is shown below as "Cash Price". The credit price is shown below as "Total Sale Price". By signing this contract, you choose to buy the vehicle on credit under the terms and conditions in this contract and you are individually liable to the Creditor for any amount due.
**Description of Vehicle.** You agree to buy and the Creditor agrees to sell the following vehicle:

| New, Used or Demo | Year | Manufacturer's Name or Make | Model Name and/or Model Number | Body Type | Vehicle Identification Number or Manufacturer's Serial Number |
|---|---|---|---|---|---|
| New | 2021 | Toyota | Corolla | LE CVT | JTDEPMAE5MJ162970 |

| Primary Use for Which Purchased | ☒ personal | ☐ business | ☐ agricultural | ☐ N/A |
|---|---|---|---|---|
| If business use is checked, Buyer is: | ☐ an individual | ☐ a corporation | ☐ a partnership | |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your downpayment of $ 1,500.00. |
|---|---|---|---|---|
| 12.54 % | $ 12,765.02 | $ 28,057.48 | $ 40,822.50 | $ 42,322.50 |

**Your Payment Schedule Will Be:**

| Number of Payments: | Amount of Each Payment: | When Payments are Due: |
|---|---|---|
| One deferred downpayment of | N/A | N/A |
| 75 regular payments | $ 544.30 | Monthly, beginning 05/02/2021 |
| One final payment of | N/A | N/A |

**Late Charge.** If a payment is not paid in full within 10 calendar days after it is due, you will pay a late charge of 5% of the unpaid amount of the late payment or $50.00, whichever is less.
**Prepayment.** If you pay off all your debt early, you will not have to pay a penalty.
**Security.** You are giving a security interest in the vehicle being purchased.
**Other Terms.** Please read this contract in its entirety for additional information about security interests, non-payment, default, any required repayment in full before the scheduled date, and penalties.

**NO COOLING OFF PERIOD.** State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the Seller agrees to or for legal cause. You cannot cancel this contract simply because you change your mind.

**Notice to Buyer(s) of Used or Demonstration Vehicles.** If the vehicle being purchased is a used or demonstration vehicle, the following notice applies: **The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**

**NOTICE:** ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The preceding NOTICE applies only to goods or services obtained primarily for personal, family or household use. In all other cases, you will not assert against any subsequent holder or assignee of this contract any claims or defenses you may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

(Side margins: TRUE AND ACCURATE COMPLETED COPY - UCC NON-AUTHORITATIVE COPY)

**ITEMIZATION OF THE AMOUNT FINANCED**

1. Cash Price (including any accessories, services or taxes )  $ 20,326.48 (1)

2. Total Down Payment =  Trade-in   N/A (Year)   N/A (Make)   N/A (Model)

   Gross Trade-In Allowance  $ N/A
   Less Pay Off Made By Seller  $ N/A
   Equals Net Trade In  $ N/A
   + Cash  $ 1,500.00
   + Other  $ N/A
   (If total downpayment is negative, enter "0" and see 4I Below)  $ 1,500.00 (2)

3. Unpaid Balance of Cash Price (1 minus 2)  $ 18,826.48 (3)

4. Other Charges Including Amounts Paid to Others on Your Behalf (Creditor may be retaining a portion of these amounts):

   A. Price of Optional Credit Insurance Paid to the Insurance Company or Companies Named Below.
      Life $ N/A    Disability, Accident and Health $ N/A    $ N/A
   B. Price of Optional Guaranteed Auto Protection Paid to the Company Named Below  $ 995.00
   C. Lien Notation Fee Paid to Public Officials  $ N/A
   D. Official Fees Paid to Government Agencies
      to GWRF    for LEMON LAW    $ 3.00
      to N/A    for N/A    $ N/A
      to N/A    for N/A    $ N/A
      to N/A    for N/A    $ N/A
   E. Government License and/or Registration Fees (Itemize)  Registration Fee [$ 25.00]  $ 25.00
   F. Government Certificate of Title Fees  $ 18.00
   G. Government Taxes Not Included in Cash Price  $ N/A
   H. Document Preparation Fee Paid to Creditor  $ 599.00
   I. Other Charges (Creditor must identify who will receive payment and describe purpose)
      to N/A    for Prior Credit or Lease Balance    $ N/A
      to FWS    for Service Contract    $ 3,119.00
      to DING AND DENT    for Etch    $ 1,005.00
      to ELITE    for Maintenance Plan    $ 2,380.00
      to ETR    for Electronic Filing Fee    $ 98.00
      to FWS    for Tire & Wheel    $ 989.00
      to N/A    for N/A    $ N/A
      to N/A    for N/A    $ N/A
      to N/A    for N/A    $ N/A
      to N/A    for N/A    $ N/A
      to N/A    for N/A    $ N/A

   Total Other Charges and Amounts Paid to Others on Your Behalf  $ 9,231.00 (4)

5. Prepaid Finance Charge/Processing Fee (Creditor may retain a portion of this amount)  $ N/A (5)
6. Principal Amount (3+4+5)  $ 28,057.48 (6)
7. Amount Financed (6 minus 5)  $ 28,057.48 (7)

The Base Rate is  12.54  % per annum

TRUE AND ACCURATE COMPLETED COPY - UCC NON-AUTHORITATIVE COPY
TRUE AND ACCURATE COMPLETED COPY - UCC NON-AUTHORITATIVE COPY
T399678295-DP399678238   THIS IS A CUSTOMER COMPLETED COPY OF THE SIGNED ELECTRONIC FORM HELD BY ROUTEONE LLC

T399678295-DP399678238    THIS IS A CUSTOMER COMPLETED COPY OF THE SIGNED ELECTRONIC FORM HELD BY ROUTEONE LLC

**Optional Credit Insurance. Credit life insurance and credit disability insurance are not required to obtain credit** and will not be provided unless you sign and agree to pay the additional purchase price, which is shown below and in 4A of the Itemization above. If you want this optional insurance, check the insurance coverage(s) desired and sign below.
Term: _____N/A_____ months

**Check the optional insurance coverage(s) desired:**   [ ] Credit Life, Single Coverage $ _____N/A_____   [ ] Credit Life, Joint Coverage $ _____N/A_____
[ ] Credit Disability, Single Coverage (Buyer Only) $ _____N/A_____

If you elect optional credit insurance coverage and are accepted by the insurance company, the terms and conditions will be as described in the policies or certificates issued by the insurance company. The original amount of the decreasing term credit life insurance will not exceed $ _____N/A_____. Credit disability insurance payments will equal the monthly payment amount but will not be more than $ _____N/A_____. Insurance Company _____N/A_____.

**Optional Credit Life Insurance.** You understand and acknowledge that: (1) you may assign any other credit life insurance policy you own or obtain to cover this obligation and that you do not need to buy credit life insurance from the Creditor to obtain credit; (2) credit life insurance coverage may be deferred if at the time of your application you are unable to engage in employment or unable to perform normal activities of a person of like age and sex; (3) the benefits payable under the policy will terminate when you reach a certain age; and (4) your age is represented accurately on the application or policy.
**APPROVAL: YOU WANT TO OBTAIN THE OPTIONAL CREDIT INSURANCE COVERAGE(S) CHECKED ABOVE.**

A _____N/A_____   N/A          A _____N/A_____   N/A
Buyer Signature         Date         Co-Buyer Signature         Date

---

**THE INSURANCE, IF ANY, REFERRED TO IN THIS CONTRACT DOES NOT INCLUDE LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS.**

---

**Optional Guaranteed Auto Protection ("GAP").** GAP is not required to obtain credit and you may purchase it from anyone you want who is reasonably acceptable to the Creditor. You may purchase GAP under this contract by signing below and agreeing to pay the additional purchase price, which is shown in 4B of the Itemization above. If you purchase this protection, you have reviewed the terms of the contract which describe this protection and you understand that a copy of the completed GAP contract will be sent to you as soon as practicable.

GAP Company _____FWS_____          _____75_____ Term (months)
**APPROVAL: YOU WANT TO OBTAIN THE OPTIONAL GUARANTEED AUTO PROTECTION DESCRIBED ABOVE.**

B /s/          03/18/2021          B _____N/A_____   N/A
Buyer Signature         Date         Co-Buyer Signature         Date

---

**Receipt of Goods and Promise to Pay.** You agree that you have received the vehicle and/or services described above, and have accepted delivery of the vehicle in good condition. You promise to pay to the Creditor the Principal Amount shown above, plus a Finance Charge calculated on a daily basis at the Base Rate of the unpaid part of your Principal Amount. The Creditor will treat any Prepaid Finance Charge as fully earned on the date of this contract. In addition, you promise to pay to the Creditor all other amounts due under this contract.

**Payments Before or After Scheduled Due Date.** This is a simple interest contract. This means that the amount of the Finance Charge may vary. The Finance Charge and Total of Payments shown above are based on the assumption that all payments are made when due. The Creditor credits each payment first to accrued Finance Charge, then to the unpaid balance of the Principal Amount and the remainder to unpaid charges. The Creditor computes your Finance Charge each day on the unpaid balance of the Principal Amount. The earlier you make payments before their due dates, the less Finance Charge you will owe. The Creditor will send you a check for any amount owed to you after your last payment. The later you make payments after they are due, the greater the Finance Charge. The Creditor will advise you of any additional amount you owe at the end of the contract term. You understand that payment of any installment after it is due will be a default on your part as stated below.

**Ownership, Location and Risk of Loss.** You agree to pay the Creditor all you owe under this contract even if the vehicle is damaged, destroyed or missing. You agree not to sell, transfer, rent, or lease the vehicle without the prior written permission of the Creditor. The vehicle will be kept at the address you specify in this contract unless another address is provided to the Creditor in writing. You will notify the Creditor in writing of any change in your address where the vehicle is regularly located. You agree not to remove the vehicle from the U.S. or Canada. You agree to keep the vehicle properly maintained. You agree not to expose the vehicle to misuse or confiscation. You will make sure the Creditor's security interest (lien) on the vehicle is shown on the title.

**Taxes and Other Charges.** You are responsible for and will pay when due all taxes, repair bills, storage bills, fines, assessments and other charges in connection with the vehicle. If you fail to pay these amounts the Creditor may do so for you. If the Creditor does so, you agree to repay the amount when the Creditor asks for it. You agree to comply with all registration, licensing, tax and title laws applicable to the vehicle.

**Security Interest.** You hereby grant to the Creditor a security interest in: (1) the vehicle being purchased, any accessories and equipment then installed in the vehicle, any accessions installed in or affixed to the vehicle and any replacement parts installed in the vehicle; (2) insurance premiums and charges for service or guaranteed auto protection contracts returned to the Creditor; (3) proceeds of any insurance policies, service contracts or guaranteed auto protection contract on the vehicle; and (4) proceeds of any insurance policies on your life or health which are financed in this contract. This secures payment of all amounts you owe in this contract and in any transfer, renewal, extension, refinancing or assignment of this contract. This also secures your other agreements in this contract.

T399678295-DP399678238  - THIS CUSTOMER COMPLETED COPY WAS CREATED ON 03/18/2021 09:43:10 PM GMT

THIS IS A CUSTOMER COMPLETED COPY OF THE SIGNED ELECTRONIC FORM FILED BY ROUTEONE LLC

**Required Physical Damage Insurance.** You agree to have physical damage insurance covering loss or damage to the vehicle for the term of this contract. The physical damage insurance must name the Creditor as loss payee and must require 10 days advance written notice to the Creditor before any cancellation or reduction in the insurance coverage. You agree to deliver promptly to the Creditor whatever written proof of insurance coverage the Creditor may reasonably request. At any time during the term of this contract, if you do not have physical damage insurance which covers both the interest of you and the Creditor in the vehicle, then the Creditor may buy it for you. If the Creditor does not buy physical damage insurance which covers both interests in the vehicle, it may, buy insurance which covers only the Creditor's interest.

The Creditor is under no obligation to buy any insurance, but may do so if it desires. If the Creditor buys either of these coverages, it will let you know what type it is and the charge you must pay. The charge will consist of the purchase price of the insurance and a finance charge at the Base Rate applicable to this contract or, if that rate is not authorized, the highest lawful rate. Unless you pay the purchase price of the insurance within 10 days from the date the Creditor notifies you of the charge, you agree to pay the charge in equal installments along with the payments shown on the payment schedule.

If the vehicle is lost or damaged, you agree that the Creditor can use any insurance settlement either to repair the vehicle or to apply to your debt.

**Late Charge.** If a payment is not paid in full within 10 days after it is due, you will pay a late charge of 5% of the unpaid amount of the late payment or $50.00, whichever is less. Acceptance of a late payment or late charge does not excuse your late payment or mean that you can keep making payments after they are due. The Creditor may also take the steps set forth below if there is any late payment.

**Insurance, Service or Guaranteed Auto Protection Contracts.** This contract may contain charges for insurance, service or guaranteed auto protection contracts. If you default under this contract, you agree that the Creditor may claim benefits under these contracts and/or terminate them to obtain refunds for unearned charges. You agree to cooperate with the Creditor in collecting any proceeds or cancellation refunds, including executing all necessary papers.

**Insurance, Service or Guaranteed Auto Protection Contract Charges Returned to Creditor.** If any charge for required insurance is returned to the Creditor, it may be credited to your account or used to buy similar insurance or insurance which covers only the Creditor's interest in the vehicle. Any refund on optional insurance, service or guaranteed auto protection contracts obtained by the Creditor will be credited to your account. Your next regular payment will continue to be due on its scheduled date, even if these amounts are credited to your account.

**Default and Required Repayment in Full Before the Scheduled Date.** You will be in default under this contract if you fail to pay any payment according to the payment schedule; if bankruptcy or insolvency proceedings are initiated by or against you; if any person tries to take any of your property by legal proceedings while it is in your possession or control; if you use the vehicle for illegal purposes; if at any time you appear on the list of Specially Designated Nationals and Blocked Persons published by the U.S. Treasury Department's Office of Foreign Assets Control, or any other similar or successor list containing names of persons with whom we cannot do business, or we are prohibited at any time by any federal or state law, rule, regulation or order from doing business with you; or if you break any of the agreements in this contract. If you are in default, the Creditor can accelerate payments under this contract and demand that you pay all that you owe at once. The Creditor may also take the steps set forth below if you default under this contract.

**Repossession of the Vehicle for Failure to Pay.** If you default under this contract, the Creditor can take the vehicle from you (repossession). To take the vehicle the Creditor can enter your property, or the property where it is stored, so long as it is done peacefully and lawfully. If there is any personal property in the vehicle, such as clothing, the Creditor can store it for you at your expense. If you do not ask for these items back, the Creditor may dispose of them as the law allows. Any accessories, equipment or replacement parts will remain with the vehicle.

**Getting the Vehicle Back After Repossession.** If the Creditor repossesses the vehicle, you have the right to get it back (redeem) by paying the entire amount you owe on the contract (not just past due payments), plus any late charges, the cost of taking and storing the vehicle and other expenses that the Creditor has had. Your right to redeem will end when the vehicle is sold or when the Creditor enters into a contract for its disposition, whichever occurs first.

**Sale of the Repossessed Vehicle.** The Creditor will send you a written notice of sale at least 10 days before selling the vehicle. If you do not redeem the vehicle by the date on the notice, the Creditor can sell it. The Creditor will use the net proceeds of the sale to pay all or part of your debt.

To the extent permitted by law, the net proceeds of sale will be handled in the following manner: Any late charges and any charges for taking, storing, cleaning, advertising, leasing and/or selling the vehicle and any reasonable attorney fees and court costs will be subtracted from the selling price.

If you owe the Creditor less than the net proceeds of sale, the difference is owed you unless the Creditor is required to pay it to someone else. For example, the Creditor may be required to pay a lender who has given you a loan and also taken a security interest in the vehicle.

If you owe more than the net proceeds of sale, you agree to pay the difference between the net proceeds of sale and what you owe, when the Creditor asks for it. If you do not pay this amount when asked, you may also be charged interest at the Base Rate applicable to this contract or, if that rate is not authorized, the highest lawful rate until you do pay all you owe.

**Collection Costs.** If this contract is referred for collection to any attorney who is not a salaried employee of the Creditor, you agree to pay the attorney's fee in an amount not to exceed 15 percent of the amount owing on the contract and any court costs. You also agree to pay the Creditor a check collection charge, as authorized by law, for each check, draft or other form of payment which is returned or dishonored for any reason.

**Credit Information.** You hereby authorize the Creditor to investigate your credit worthiness and credit capacity in connection with the establishment, maintenance and collection of your account and to furnish information concerning your account, including insurance information, to credit reporting agencies and others who may lawfully receive such information.

**Cell Phones and E-mail:** If you give the Creditor a cellular or mobile telephone number, you acknowledge that by doing so you consent to the use of that telephone number to call you or to send you a text message on your cellular or mobile telephone with regard to this contract. You further agree and consent that the Creditor may use auto-dialers and pre-recorded messages in connection with any telephone contacts made with you, including, but not limited to, calls made and text messages sent to your cellular or mobile telephone. You understand and agree that if the Creditor calls your cellular or mobile telephone or sends you a text message on your cellular or mobile telephone, depending upon the type of plan or program you have with your telecommunications provider, you may incur a cost or charge for such telephone call or text message. Finally, you acknowledge that if you gave the Creditor an e-mail address you are specifically authorizing the Creditor to send you messages about this contract using that e-mail address.

**Interest after Termination.** You further agree to pay interest at the Base Rate applicable to this contract or, if that rate is not authorized, the highest lawful rate, on any amounts which remain unpaid after the termination of this contract.

**Delay in Enforcing Rights and Changes in this Contract.** The Creditor can delay or refrain from enforcing any of its rights under this contract without losing them. For example, the Creditor can extend the time for making some payments without extending others. Any change in the terms of this contract must be in writing and signed by the Creditor. No oral changes are binding. If any part of this contract is not valid, the remaining parts will still be enforceable.

TRUE AND ACCURATE COMPLETED COPY - UCC NON-AUTHORITATIVE COPY

T399678295-DP399678238 - THIS IS A CUSTOMER COMPLETED COPY OF THE SIGNED ELECTRONIC FORM HELD BY ROUTEONE LLC

**Warranties Seller Disclaims.** You understand that the Seller is not offering any express warranties unless: (i) the Seller extends a written warranty; or (ii) the window form for a used or demonstration vehicle indicates that the Seller is giving express warranties.

**In addition, there are no implied warranties of merchantability or fitness for a particular purpose or any other implied warranties by the Seller covering the vehicle unless: (i) the Seller extends a written warranty; (ii) within 90 days from the date of this contract, you enter into a service contract with the Seller which applies to the motor vehicle being purchased; or (iii) the window form for a used or demonstration vehicle states that the Seller is giving implied warranties. To the extent permitted by applicable law, the Seller shall have no responsibility to you or to any other person with respect to any interruption of service, loss of business or anticipated profit or consequential damages.**

An implied warranty of merchantability generally means that the vehicle is fit for the ordinary purpose for which such vehicles are generally used. A warranty of fitness for a particular purpose is a warranty that may arise when the Seller has reason to know the particular purpose for which you require the vehicle and you rely on the Seller's skill or judgment to furnish a suitable vehicle. This provision does not affect any warranties covering the vehicle which may be provided by the vehicle manufacturer.

**Governing Law.** This contract will be governed by the laws of the State of Georgia.

**ARBITRATION CLAUSE - PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS.** 1. EITHER YOU OR WE (CREDITOR/SELLER or ASSIGNEE) MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL. 2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS. 3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION. Any claim or dispute, whether in contract, tort, statutory or otherwise (including the interpretation and scope of this Arbitration Clause, and whether the claim or dispute may be arbitrated between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Clause shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You and we expressly waive any right that either of us may have to arbitrate a class action. You may choose the American Arbitration Association, 1633 Broadway, Floor 10, New York, NY 10019 (www.adr.org), or any other organization that you may choose subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law in making an award. The arbitration hearing shall be conducted in the federal district in which you reside unless the Creditor-Seller is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will advance your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $2500, which may be reimbursed by decision of the arbitrator at the arbitrator's discretion. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Clause, then the provisions of this Arbitration Clause shall control. The arbitrator's award shall be final and binding on all parties, except that in the event the arbitrator's award for a party is $0 or against a party is in excess of $100,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel. The appealing party requesting new arbitration shall be responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs. Any arbitration under this Arbitration Clause shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration. You and we retain any rights to self-help remedies, such as repossession. You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Clause shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Clause, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Clause shall be unenforceable. **You and we agree to this Arbitration Clause.**

Buyer's Initials: C _____ Co-Buyer's Initials: C N/A

**Electronic Contracting and Signature Acknowledgement.** You agree that: (i) this contract is an electronic contract executed by you using your electronic signature, (ii) your electronic signature signifies your intent to enter into this contract and that this contract be legally valid and enforceable in accordance with its terms to the same extent as if you had executed this contract using your written signature and (iii) the authoritative copy of this contract ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by us for the storage of authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the foregoing, if the Authoritative Copy is converted by printing a paper copy which is marked by us as the original ("the Paper Contract"), then you acknowledge and agree that (1) your signing of this contract with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this contract, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, your obligations will be evidenced by the Paper Contract alone. You and we agree to this Electronic Contracting Clause as stated above.

Buyer's Initials: D _____ Co-Buyer's Initials: D N/A

**IMPORTANT: THE ANNUAL PERCENTAGE RATE MAY BE NEGOTIATED WITH THE SELLER. SELLER MAY ASSIGN THIS CONTRACT AND RETAIN ITS RIGHTS TO RECEIVE A PART OF THE FINANCE CHARGE. READ ALL THE ABOVE TERMS BEFORE SIGNING BELOW.**

**NOTICE TO THE BUYER: DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.**

You signed this contract and received a completely filled-in copy on _____March 18th_____, __2021__

E _____ (Signature of Buyer)    E N/A (Signature of Co-Buyer)

Accepted ___ASBURY ATLANTA TOY 2 LLC___ (Creditor)    By: E _____ Finance (Signature and Title)

| This contract is assigned to SETF subject to repurchase under the terms of the "Seller's Assignment" contained in this contract. | This contract is assigned to SETF without recourse or with limited recourse under the terms of the "Seller's Assignment" contained in this contract. |
|---|---|
| N/A F N/A N/A | ASBURY ATLANTA TOY 2 LLC G _____ Finance |
| Seller By (If Corp. or Partnership) (Title) | Seller By (If Corp. or Partnership) (Title) |

TRUE AND ACCURATE COMPLETED COPY - UCC NON-AUTHORITATIVE COPY

## SELLER'S ASSIGNMENT

Seller sells and assigns to World Omni Financial Corp. d/b/a Southeast Toyota Finance ("SETF") all of its right, title and interest in this contract.

In addition to the Seller's Warranties and Representations in the Retail Sales Financing Agreement ("Master Agreement"), Seller warrants and represent that: (1) The contract arose from the retail sale of the property described in the contract; (2) Seller had title to the property at the time of sale free of any liens; (3) All disclosures required by law were properly made to the Buyer prior to the Buyer signing the contract; (4) All insurance disclosures made by the Seller are complete, accurate and properly made in accordance with applicable law; (5) All insurance documentation will be delivered to the Buyer within the time required by law; (6) To the best of Seller's knowledge, the Customer Statement is accurate; (7) The down payment received by Seller is exactly as stated; (8) The contract is enforceable; (9) Seller is licensed as required by law; (10) Seller has fully complied with all consumer protection, insurance and other laws and regulations applicable to the sale of the vehicle and any item contained in this contract; (11) Any service contract sold under this contract is offered for sale in connection with comparable cash transactions at a price equal to that disclosed in the contract; (12) Seller has complied with all applicable requirements of the FTC Used Motor Vehicle Trade Regulation Rule; (13) The deferred down payment, if any, is disclosed in the contract, is payable before the due date of the first regularly scheduled payment and is not subject to a finance charge; and (14) Seller has not charged any amounts, including amounts for documentation or processing charges, which Seller would not have charged if this transaction had been for cash other than amounts disclosed for finance charge, physical damage insurance, credit insurance and lien notation fees and other costs paid to public officials to perfect a security interest in the vehicle.

Each of these warranties and representations is material to SETF's acceptance of this contract. If any of them is breached or is erroneous, Seller unconditionally promises to accept reassignment of this contract and to pay SETF, upon demand, the full amount of the unpaid balance under this contact. Seller also agrees to indemnify SETF to the full extent of all losses or expenses incurred by SETF as a result of such breach or error.

Seller agrees to indemnify SETF for any judicial setoff or loss suffered as a result of a claim or defense of Buyer against Seller.

If this contract is rescinded, cancelled, voided or otherwise made unenforceable, Seller shall pay SETF the full amount SETF paid to purchase it.

Seller shall be liable even if a waiver, compromise, settlement or variation of the terms of the contract releases the Buyer.

Seller waives notice of acceptance of this guarantee and notices of non-payment and non-performance.

**CONTRACTS ASSIGNED SUBJECT TO REPURCHASE**

If this contract is assigned subject to repurchase, in addition to the foregoing guarantees, indemnities and obligations, Seller unconditionally guarantees to repurchase this contract in the event of a default and pay all losses and expenses incurred by SETF as provided by the terms of the Master Agreement.

**CONTRACTS ASSIGNED WITHOUT RECOURSE OR WITH LIMITED RECOURSE**

If this contract is assigned without recourse or with limited recourse, such assignment is without recourse to the Seller except in the circumstances set forth above and in the Master Agreement and in and to the extent that an amount is stated in the following paragraph,

Seller unconditionally guarantees that if Buyer defaults in the payment of any installment under this contract, Seller will pay, upon demand by SETF, the unpaid balance up to the sum of $_____N/A_____ .

